CHARLIE O. LAWSON, ADMINISTRATOR OF THE
ESTATE OF MARVIN O. LAWSON, DECEASED

V.

JOHN DOE

Record No. 890962

April 20, 1990

Present: All the Justices

*J. William Watson, Jr. (John E. Greenbacker; Edmunds & Watson*, on brief), for appellant.

*Frank O. Meade (Frank K. Friedman; Woods, Rogers & Hazlegrove*, on brief), for appellee.

CHIEF JUSTICE CARRICO delivered the opinion of the Court.

Code § 46.2-1111 provides that "[n]o vehicle shall carry any load extending more than six inches beyond the line of the fender or body."* Violation of this section constitutes negligence. *Atl. Greyhound Corp. v. Shelton*, 184 Va. 684, 689-90, 36 S.E.2d 625, 627 (1946).

Adopting the foregoing proposition as his sole theory of recovery, the plaintiff, Charlie O. Lawson, administrator of the estate of his son, Marvin O. Lawson, filed a wrongful death action against the defendant, John Doe, an unknown motorist. A jury returned a verdict in favor of the plaintiff for $90,000, plus medical expenses of $6,100 and funeral expenses of $2,900. Upon motion of the defendant, the trial court set the verdict aside and entered final judgment in his favor. We granted the plaintiff an appeal.

---

* At the time of the events involved in this case, Code § 46.2-1111 was Code § 46.1-334. *See* Acts 1989, ch. 727. The language remains the same.

The evidence shows that during the early evening hours of July 20, 1987, Marvin Lawson, seventeen years of age, was fatally injured near the intersection of State Routes 654 and 678 in Halifax County. A short distance north of this intersection, State Route 654 intersects U.S. Route 360. Marvin resided approximately four miles west of the latter intersection.

There were no eyewitnesses to the incident. What little is known about the incident was furnished by several residents of the area.

Danny Martin, a police officer for the Town of Halifax, resided on the easterly side of Route 654, just north of its intersection with Route 678. On the evening in question, he was working in his garden when he heard "what [he] thought was a crash of . . . cars . . . colliding." His view of the road was blocked by two houses, but, by looking between them, he was able to see "some sparks hitting the highway."

Proceeding to the point where he had seen the sparks, Martin found a board lying across the center line of Route 654 in the southern portion of the intersection. Because the board was too heavy to lift, Martin dragged it to the shoulder of the road.

The board turned out to be nine feet long, eleven inches wide, and two and one-half inches thick. Two nails were found in the board which, although rusted, "were scraped like they had struck the pavement."

After he removed the board, Martin walked northward along Route 654 looking for "something [he] might have missed." On the westerly shoulder some 140 feet from where he found the board, he discovered a "neatly folded" man's dress shirt, with a baseball cap "right on top of it." These articles of clothing later were identified as belonging to Marvin Lawson.

Raleigh Cole lived on the westerly side of Route 654, south of its intersection with Route 678. On the evening in question, he was sitting on his front porch when he heard "somebody [throw] a car or a truck or something in gear, and after a while a truck passed" at a high rate of speed.

Doris Ann Womack resided on the northwest corner of Routes 654 and 678, facing Route 654. On the evening in question, she was "preparing some canning" when she heard a sound "like a fast vehicle pass[ing] by [her] house" and "a whole lot of commotion going on like . . . something hit something." She then heard the sound of a motor vehicle changing gears and speeding away.

In a few moments, she heard "somebody hollering" and went outside to investigate. She observed "this young man," later identified as Marvin Lawson, walking toward her in a bent-over position. She asked him: "What's wrong?" He replied: "A car hit me." He then collapsed, and Mrs. Womack went to a neighbor's home to summon emergency medical assistance.

Marvin Lawson was transported by ambulance to a hospital. Upon examination, he was found to have suffered "extensive trauma to the abdomen . . . below the ribs and above the pubic bone," including "scrapes . . . in a horizontal fashion across the entire abdomen." The marks on the abdomen were described as being approximately the same width as the thickness of the board Danny Martin found in the highway. Marvin's body bore no other outward sign of injury.

Emergency surgery was performed on Marvin to stop "bleeding into the abdomen." The surgeon found that "the left side of [Marvin's] liver was totally dislocated and laying loose" and that his "gallbladder was torn off the common bile duct." The doctor could not control the bleeding, and Marvin died on the operating table.

The plaintiff's theory of the case is summarized in these passages from his opening brief:

> The involvement of an unknown motorist is firmly established by the decedent's dying statement that he was hit by a car. The facts (1) that his injuries resulted from a single severe horizontal blow to his abdomen, (2) that the external mark extended all across his abdomen, and (3) that there was no other injury were enough for the jury to conclude that he was struck by an object extending from the side of the vehicle and that the protrusion was in excess of six inches. Had he been hit by the vehicle itself he certainly would have sustained other injuries.
>
> . . . .
> The jury was . . . justified in concluding that the protruding object was carried by a moving motor vehicle, based on the horizontal force needed to inflict so severe an injury and "the lack of black and blue marks such as one might expect if a baseball bat struck him."
>
> It could be argued that this evidence alone was sufficient to establish proximate cause. But it is buttressed by the ob-

servation of sparks made by the very large, heavy board as it slid along the highway, its recovery from the highway and the fact that the mark on the decedent's abdomen matched the thickness of the board.

The location of the hat and shirt on the westerly shoulder of the highway, the location of the decedent's home, the testimony as to the sound of a motor vehicle accelerating in a southerly direction, and the decedent's stumbling approach to [Mrs. Womack's] home located west of the highway all combine to provide a sufficient factual foundation to infer that the decedent was hit by the protruding board as he walked north on the west shoulder of State Road 654 toward home, that he dropped his hat and shirt together near where he was struck, and went for help toward the nearest dwelling.

■ The difficulty with the plaintiff's position is the simple lack of evidence to support the theory he advances, *viz.*, that Marvin Lawson was struck by an object extending more than six inches beyond the side of the unknown motorist's southbound vehicle as Marvin walked northward on the western shoulder of Route 654 toward home. For example, at this late stage in the proceeding, we do not even know where or in what direction Marvin was walking, if indeed, he was a pedestrian. It is just as likely that he was walking on the eastern shoulder of Route 654 in the opposite direction from home. With that one uncertainty alone, the plaintiff's whole theory of the case collapses.

But there is more uncertainty. We know, of course, that a board was found in the road and that it probably slid some distance, emitting sparks along the way. But we do not know where the board came from, or, if it came from a motor vehicle, whether it extended an unlawful distance beyond the vehicle's side, or if it did, whether it struck Marvin Lawson while it was still on the vehicle and was dislodged as a result of its impact with his body, or whether it was dislodged by some unknown, non-negligent force and then struck him.

■ It is true, as the plaintiff points out, that we said in *Bly* v. *Southern Ry. Co.*, 183 Va. 162, 31 S.E.2d 564 (1944):

It is not necessary that the circumstances establish negligence as a proximate cause with such certainty as to exclude every other possible conclusion. It is not necessary to nega-

tive every possibility that the accident occurred in some extraordinary manner which would relieve the defendant. Often this would be impossible. All that is required is that a jury be satisfied with proof which leads to a conclusion with probable certainty where absolute logical certainty is impossible.

*Id.* at 176, 31 S.E.2d at 570. However, "[i]t is incumbent on [a] plaintiff who alleges negligence to show why and how the accident happened, and if that is left to conjecture, guess or random judgment, he cannot recover." *Weddle, Administratrix* v. *Draper*, 204 Va. 319, 322, 130 S.E.2d 462, 465 (1963). It is also incumbent upon a court to avoid reaching an illogical result.

■ Unfortunately for the plaintiff, he is left with nothing but conjecture, guess, or random judgment to support his theory of the case. Furthermore, if we were to adopt his theory, we would reach an illogical result. It simply does not follow from the few facts the plaintiff was able to establish that Marvin Lawson was "struck by an object extending from the side of the [John Doe] vehicle . . . in excess of six inches."

The plaintiff argues, however, that while the evidence was sufficient "to enable the jury to reach a valid conclusion . . . without resort to conjecture, guess or random judgment," the evidence would have been augmented had the trial court permitted him to introduce the testimony of an expert witness. The plaintiff says that he wanted to ask the expert to "state his opinion as to the horizontal velocity needed for the board to slide along the pavement to the spot where it was found if it started its slide from a point near the location of the hat and shirt."

According to a proffer made by the plaintiff below, the expert would have answered that the needed velocity was forty-five miles per hour. This testimony, the plaintiff states, would have established both the location of the accident and the fact that the board had been carried by a motor vehicle. The trial court excluded the expert's testimony on the ground it was too speculative.

■ We agree with the trial court. Code § 8.01-401.1 permits an expert witness to render an opinion "from facts, circumstances or data made known to or perceived by such witness at or before the hearing or trial during which he is called upon to testify." The facts, circumstances, or data such a witness relies upon, if "of a

type normally relied upon by others in the particular field of expertise," need not be admissible in evidence.

■ Here, the plaintiff concedes, as, indeed, he must, that his expert would have had to assume that the board began its slide along the pavement "opposite the location of the hat and shirt." No evidence established that location as the beginning point of the board's slide, and only an assumption could have supplied this missing, essential factor.

We do not read Code § 8.01-401.1 as sanctioning the admission of expert testimony based upon a mere assumption which, as here, has no evidentiary support. Hence, the trial court did not err in excluding the proffered testimony.

For the reasons assigned, the judgment of the trial court will be affirmed.

*Affirmed.*