## CIRCUIT COURT OF THE CITY OF RICHMOND

Gladys Russell,
Administratrix

v.

Clark Equipment Co. et al.

November 25, 1996

Case No. LB-201-3

By Judge T. J. Markow

The case is before the court on the motions *in limine* of Defendants Impco, Clark, and Spacemaker.

### Factual Background

Plaintiff's decedent, Mr. Russell, died on, or shortly after, the late night hours of May 20, 1994. A medical examiner reported high levels of carbon monoxide (CO) in the decedent's blood. Mr. Russell was found within the confines of the Alcan facility in Ashland, Virginia, in the vicinity of a 1989 Clark Liquid Propane forklift, manufactured and sold by Defendant Clark Equipment Company (Clark). The forklift's ignition was found to be in an on position with its liquid propane gas tank empty. Mr. Russell had apparently been using the forklift to unload a truck within the Alcan warehouse. Plaintiff sues the manufacturer, Clark, Impco, manufacturer of a portion of the carburetor system, and the maintainers of the forklift, Spacemaker, claiming, in essence, that they either manufactured and/or maintained the forklift defectively so as to result in its producing excessive levels of carbon monoxide.

On May 26, 1994, independent tests were conducted by William England, a field engineer. These tests were conducted to measure the CO output of the forklift. Based on these test results and his observations, Mr. England testified in deposition that, in his opinion, a VFF30 valve, manufactured by Defendant Impco Technologies, Inc. (Impco), caused high levels of CO to be released into the air in which Mr. Russell was working.

Two of Plaintiff's expert witnesses have been deposed, and their opinions are the subject of the Motions in Limine of Defendants Clark, Impco, and Spacemaker.

*Analysis*

The Motions in Limine, seek to exclude certain expected testimony of Plaintiff's experts, Dr. F. A. Iachetta and Dr. Martin van Adelsberg.

To analyze the admissibility of statements expected to be made by these experts, the Court turns to the recent decision of the Virginia Supreme Court in *Tittsworth v. Robinson,* 252 Va. 151, 475 S.E.2d 261 (1996), to find guidance. In the *Tittsworth* case, the Court held that expert testimony must meet certain "fundamental requirements" to ensure its reliability before it is admissible. That case outlined three such requirements: (1) the testimony cannot be speculative or founded upon assumptions that have an insufficient factual basis; (2) the testimony is inadmissible if the expert has failed to consider all of the variables that bear upon the inferences to be deduced from the facts observed; and (3) where tests are involved, such testimony should be excluded unless there is proof that the conditions existing at the time of the tests and the time relevant to the facts at issue are substantially similar.

Defendants argue that, based on the depositions of Drs. Iachetta and van Adelsberg, their expected testimony does not satisfy any of the *Tittsworth* elements. Plaintiff argues that this is a factual determination, going to the weight of the testimony with the jury.

The court agrees with the Defendants' analysis; without certain basic indicia of reliability, the evidence should never reach the jury. That is the underlying reasoning behind *Tittsworth.* It is the function of this Court to act as a gatekeeper to prevent evidence not reaching this threshold from getting before the jury.

As in the *Tittsworth* case, neither of these experts had any firsthand contact with the forklift in question. They were both drawing their conclusions by examining the tests and conclusions made by other people. Both experts conclude that the forklift was emitting too much CO. This conclusion is based almost entirely on the testing performed by Mr. England which Dr. Iachetta admits in his deposition that he does not find the test results reached by England to be reliable, nevertheless he relies on them.

Both experts claim that the overabundance of CO that, in their opinion, was produced by the forklift, resulted from a defective VFF30 valve.

Despite this claim, they each admit that there are any number of other factors which they did not consider in arriving at this conclusion, which might have contributed to a high CO level.

Dr. Iachetta believed the defect to be a bent pin. At or around the time of his deposition, he constructed a mechanism for testing this theory, a metal block with a hole drilled out. He claimed that if the pin was bent, it would not go into the hole smoothly, and if it were not bent, it would slide in comfortably. The test, apparently, did not support Dr. Iachetta's theory.

Initially, Dr. van Adelsberg had subscribed to the same bent pin theory. However, the test just described took place the day before he testified. During his deposition, van Adelsberg said that he did not know what the defect in the valve was, just that the valve as a whole was defective. Dr. van Adelsberg admits in his deposition that to specify a defect would be simply to speculate. He claims a statement on this subject which is held to a reasonable degree of scientific certainty would be impossible. In this statement, he points out the flaw in allowing his testimony on this subject to reach the jury.

What he has done is to take the test results (i.e., the excessive CO emission) to construct a theory explaining the emission consistent with finding a defect. The Plaintiff claims, through the testimony of Mr. England, that the forklift was producing very high levels of CO, until Mr. England replaced the valve in controversy. After this was done, according to Mr. England, the levels of CO dropped dramatically. The Defendants have challenged the reliability of these tests, but for the purpose of this argument, the Court will leave that issue aside. Even assuming the tests to have been entirely accurate, Dr. van Adelsberg has not provided any expert testimony needed by the jury. He says simply, the levels were reduced when the valve was replaced, so the valve must have been defective, though he has no independent rationale for explaining in what way it was defective. Faced with just Mr. England's testimony, the jury could conclude this on their own, if they believe the tests to be reliable.

In short, both of these experts contradicted themselves, ignored other potential causal agents, formed their opinions without an independent analysis of the facts, and based their conclusions upon highly speculative assumptions. The Court finds this testimony to have failed to reach the threshold of reliability allowing it to be admissible before a jury. As such, neither Dr. Iachetta nor Dr. van Adelsberg, may testify at the trial as to the existence or cause of any defect in the forklift involved in this case or any

488

of its component parts, including the VFF30 valve. In this respect, the Defendants' Motions in Limine are sustained.