COURT OF APPEALS OF VIRGINIA


Present: Judge Bray, Senior Judges Cole and Overton
Argued at Richmond, Virginia


STEPHEN WILSON PAULETTE

                                        MEMORANDUM OPINION* BY
v.     Record No. 0577-99-2            JUDGE RICHARD S. BRAY
                                          FEBRUARY 22, 2000
RUGENE SEATON PAULETTE


              FROM THE CIRCUIT COURT OF HENRICO COUNTY
                   Buford M. Parsons, Jr., Judge

          Lawrence H. Framme, III (Susan H. Call;
          Framme Law Firm, P.L.C., on briefs), for
          appellant.

          Terrence R. Batzli (M. Alicia Finley; Barnes
          & Batzli, P.C., on brief), for appellee.


     Dr. Stephen Wilson Paulette (husband) appeals an order of the

trial court finding him "in breach of [the Separation and Property

Settlement] Agreement" (agreement) with his former wife, Rugene

Seaton Paulette (wife), and assessing attendant damages, fees, and

costs.  Husband argues that the court erroneously relied upon

certain evidence provided by wife's accountant/witness in

determining such issues.  We agree and reverse the order.

     The parties are fully conversant with the record, and this

memorandum opinion recites only those facts necessary to a

disposition of the appeal.

_____

     * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

Husband and wife executed the subject agreement, dated November 27, 1985, incidental to their separation and divorce. The agreement obligated husband, in pertinent part, to "pay to wife 20% of his net income for spousal support" and was incorporated into the final decree, entered December 23, 1986. On May 29, 1997, wife moved the trial court to "reinstate this matter on the active docket," and "review the amount of spousal support and maintenance [husband] is currently paying." Thereafter, by further motion, wife alleged that husband had failed to pay spousal support in accordance with the agreement and prayed the court, inter alia, to ascertain the "arrearage" and enter an appropriate judgment, "with interest . . ., attorney's fees and costs."

In proof of her claim, wife presented the evidence of William K. Stephens, III, an accountant retained by her to conduct an "analysis . . . to determine if the net income reported by [husband] to [wife], for purposes of determining the amount due to her according to [the] agreement, is a fair and accurate representation of his share of the income of the [professional] practice" conducted by husband, an oral surgeon, and his current wife, Dr. Kathryn A. Biery-Paulette (Dr. Biery), a dentist/anesthesiologist. In performing his task, Stephens reviewed "all of the pertinent data" with respect to "two major areas of concern . . . that have a material impact on the

-

outcome:" (1) "the overall net income available for distribution between the two doctors," and (2) "how that . . . net income was distributed to the two." Recognizing that "[b]oth components represent opportunities for . . . manipulation, which . . . directly affects payments" to wife, Stephens compared the "activity [of husband and Dr. Biery] to reliable industry statistics" for professional "peer groups" to "determine the reasonableness of the . . . allocation of income between the two doctors" during the targeted time period, January 1, 1993 to December 31, 1997.

Stephens' efforts culminated in a lengthy report, introduced into evidence, together with detailed schedules, appendices and related testimony. Guided by "information in his head" and "different sources that are recognized sources for percentages of profit, . . . of overhead, productivity norms,"[1] Stephens' analysis evinced a convoluted methodology. Without needlessly detailing his formulations, several factors were critical to the validity of the evaluation, including the "normal profit percentage[s] for general dentistry . . . and oral surgery," 34.1% and 46.8%, respectively, and husband's contribution to the "gross receipts" of the practice. Applying such "industry averages" to receipts attributable to husband and Dr. Biery for the years under

---

[1] Stephens specifically identified two "industry sources" which provided "industry averages," "industry data," "norms," benchmarks indispensable to his analysis.

scrutiny, Stephens determined a "fair allocation and distribution of collections and overhead" to ascertain an appropriate net income for each. He then compared such standardized net income to the actual salaries of husband and Dr. Biery for the subject years to conclude that husband was grossly underpaid, while Dr. Biery enjoyed a substantial "overage" in compensation.

Aided by further evidence pertaining to husband's transfer of certain assets to Dr. Biery, including his interests in the professional corporation which operated the practice and in a partnership which owned the condominium it occupied, at an "inflated rent[]," Stephens resolved that husband had breached the agreement, colluding with Dr. Biery in a "plan," a "strategy," "over a period of years," to reduce his "net income" chargeable with wife's spousal support. Stephens then determined the resulting arrearage by recalculating and otherwise adjusting husband's "net income" to that amount "the industry feels that [husband] should be able to pay himself" for the years, 1993-1997, offset by that support already paid to wife based upon "underreported net income."

## II.

"In Virginia property settlement [and separation] agreements are contracts and subject to the same rules of formation, validity and interpretation as other contracts." Smith v. Smith, 3 Va. App. 510, 513, 351 S.E.2d 593, 595 (1986). "The essential elements of a cause of action for breach of contract are: (1) 'a

-

legal obligation of a defendant to the plaintiff,' (2) 'a violation or breach of that right or duty,' and (3) 'a consequential injury or damage to the plaintiff.'" Westminster Investing Corp. v. Lamps Unlimited, 237 Va. 543, 546, 379 S.E.2d 316, 317 (1989) (quoting Caudill v. Wise Rambler, 210 Va. 11, 13, 168 S.E.2d 257, 259 (1969)).

"While it is true upon the breach of a valid and binding contract the law infers nominal damages, it does not infer or presume substantial or compensatory damages. The latter must be proven by competent evidence." Orebaugh v. Antonious, 190 Va. 829, 834, 58 S.E.2d 873, 875 (1950). The party alleging a breach has an "obligation to establish his damages with reasonable certainty by the best evidence which is available." White Sewing Mach. Co. v. Gilmore Furniture Co., 128 Va. 630, 650, 105 S.E. 134, 140 (1920). "Proof with mathematical precision is not required, but there must be at least sufficient evidence to permit an intelligent and probable estimate of the amount of damage." Hailes v. Gonzales, 207 Va. 612, 614, 151 S.E.2d 388, 390 (1966).

In adjudicating a contractual dispute, evidence provided by an expert is "admissible . . . if it will assist the fact finder in understanding the evidence[,]" Tittsworth v. Robinson, 252 Va. 151, 154, 475 S.E.2d 261, 263 (1996), but it must "be based on an adequate foundation." Kessee v. Donigan, ___ Va. ___, ___, ___ S.E.2d ___, ___ (2000). "[E]xpert testimony is [not relevant and

-

probative] if it is founded on assumptions that have an insufficient factual basis."  Id. at ___, ___ S.E.2d at ___.

Here, the trial court expressly "accepted [Stephens'] evaluation" and opinions, both with respect to the alleged breach and related arrearages, and fashioned the disputed order accordingly.  However, much of Stephens' methodology was problematic, oftentimes remote from and without appropriate consideration of circumstances specific to the instant cause.  Of particular concern, Stephens' analysis relied upon an attribution to husband of a fixed percentage of the total gross receipts of husband and Dr. Biery for each of the five years in issue, derived from actual data for only seven successive months in 1997 and 1998, a year otherwise excluded from his calculations.  Thus, several months during the final year of the five under examination provided a pivotal component in Stephens' computations, thereby clearly infecting his analysis and attendant opinions with temporal bias.  Similarly, Stephens' strict adherence to "industry averages," without consideration of regional variables and the specific expenses, operational and other factors peculiar to husband's practice, provided an inadequate foundation for relevant conclusions.

-

Accordingly, we reverse the disputed order and remand these proceedings for further consideration of that evidence properly before the court and attendant redetermination of the issues.

<u>Reversed and remanded.</u>