Present:   All the Justices

VIRGINIA FINANCIAL ASSOCIATES, INC.

v.   Record No. 022659

ITT HARTFORD GROUP, INC.

                    OPINION BY CHIEF JUSTICE LEROY R. HASSELL, SR.
                         September 12, 2003

ITT HARTFORD GROUP, INC.

v.   Record No. 022663

VIRGINIA FINANCIAL ASSOCIATES, INC.

          FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                  Herbert C. Gill, Jr., Judge

                              I.

     In these consolidated appeals, the primary issue that we consider is whether a plaintiff, who asserted a claim of quantum meruit, presented sufficient evidence to establish the reasonable value of services it rendered to the defendant.

                              II.

                              A.

     This appeal is the final saga in protracted litigation between plaintiff, Virginia Financial Associates, Inc. (VFA), and defendant, ITT Hartford Group, Inc. (Hartford).  These litigants were previously before this Court in ITT Hartford Group, Inc. v. Virginia Financial Associates, Inc., 258 Va. 193, 520 S.E.2d 355 (1999).  In that appeal, we set aside a jury verdict in favor of VFA.  We held that the circuit court

erred because an expert witness was allowed to give speculative opinions.  Id. at 201-03, 520 S.E.2d at 359-60. We also concluded that the evidence did not support plaintiff's claims of actual and constructive fraud.  We set aside the jury's award of compensatory damages and its award of punitive damages, which was based upon the claim of actual fraud, and entered final judgment in favor of Hartford on that claim.  We reversed the judgment of the circuit court, and we remanded the case for a new trial limited to the issue of damages on VFA's quantum meruit claim against Hartford.  Id. at 206, 520 S.E.2d at 362.

### B.

During the trial upon remand, VFA, a Virginia corporation, presented evidence that it acted as a "marriage broker" for two insurers, Hartford and the Medical Protective Company (MedPro).  William Montgomery Dise, an insurance agent and "part-owner" of VFA, was instrumental in bringing Hartford and MedPro together.

Dise approached Hartford in 1994 with a proposal that Hartford provide workers' compensation insurance coverage and business owners' insurance policies for dentists to complement an insurance package that MedPro offered.  MedPro had approximately 20,000 dentist clients to whom Hartford could potentially sell its workers' compensation insurance and other

2

insurance products.  These insurers entered into a joint venture to create an insurance product called "The Package," which was sold through a technique known as commercial mass marketing or affinity marketing.  Commercial mass marketing involves the sale of insurance products to groups whose members have similar interests or associations, in this instance, dentists.  "The Package" was subsequently sold to dentists throughout the United States.

VFA, acting principally through Dise, expended significant expense and substantial time to bring the joint venture to fruition.  VFA presented evidence that Sandra L. Shearer, Hartford's employee, assured VFA that Hartford would compensate VFA for its work.  James D. Sinay, another Hartford employee, assured Dise that Hartford would compensate VFA fairly.

VFA presented the testimony of two expert witnesses, Thomas A. Flynn and Robert Leonhart, to establish the value of the reasonable compensation that Hartford should pay to VFA for its services rendered to Hartford.  Flynn, who qualified as an expert witness on the subject of retail insurance, testified that he was knowledgeable of the methods of compensation for commercial mass marketing programs.  When asked whether he had an opinion about the range of commissions that are paid to insurance agents or agencies who bring an

affinity program to an insurer, such as Hartford, he responded "yes" and stated that "[his] opinion is that [the] range would be between 2.5 percent and 5 percent." This type of commission is referred to as a commission override. Flynn also discussed the various factors that he relied upon to form his opinion. He stated that, generally, the rate of compensation would be a commission of 3.75%, but in this instance, he discounted the commission that VFA should receive because VFA did not provide any continuing service to Hartford once Hartford and MedPro decided to market "The Package."

During Hartford's cross-examination of Flynn, he admitted that he had "never been paid a commission override for setting up an affinity program without providing any service" and that he was "not aware of anyone else" who had been paid a commission override without providing an ongoing service. Flynn also testified that in the instances when he had been paid a commission override in his capacity as an insurance agent, he continued to provide services to the insurer.

During his voir dire, outside the presence of the jury, Flynn testified that Hartford had issued an insurance contract that required the payment of a commission to an insurance agent "indefinitely as long as the business is on the books. There [was] no ongoing service from the agent. So I do recollect a contract like that."

4

Leonhart, who also qualified as an expert witness, testified that the standard range of compensation in the insurance industry for an agent who has performed the services that VFA performed for Hartford "is anywhere from two to five percent." The range of compensation is based upon many factors, including profitability and the type of insurance product. Leonhart testified that the value of VFA's services rendered to Hartford would be 3.5% of the premium income generated by the sale of "The Package" in 1994 and 1995.

During his cross-examination by Hartford, Leonhart testified as follows:

"Q: You're not aware of any compensation being paid to an agent by an insurance company in the form of a commission override where there hasn't been a negotiated agreement?

"A: No, sir.

"Q: And that negotiated agreement would deal with a number of terms, including the level of compensation; correct?

"A: Correct.

"Q: And the services to be provided by the agent?

"A: Yes, correct.

. . . .

"Q: Are you aware that at the time in August of 1995, when VFA's services for Hartford ceased, there was no agreement in place between MedPro and Hartford? Yes or no?

"A: Yes.

. . . .

"Q: Now, you would agree, in your experience, Mr. Leonhart, that . . . you're not aware of any situation where an agent like yourself, a consultant has received a commission override for providing no service?

"A: I think if you'll recall back to my original two depositions, that I did recall a couple of situations where there were some consultants that received compensation and literally were doing nothing.

. . . .

"Q: But those agents had contracts with the carriers in each instance, didn't they?

"A: Yes, sir.

"Q: Those contracts provided for some level of service by the agent, didn't they?

"A: Yes, sir.

"Q: So that was a situation where the carrier, for whatever reason, just chose not to call on the agent to provide any service but the contract said that the agent was to do something?

"A: Yes."

Upon the conclusion of its deliberation, the jury returned a verdict in favor of VFA in the amount of $1,230,000. Both litigants have appealed the circuit court's judgment confirming the verdict.

III.

A.

6

Hartford argues that the circuit court erred in permitting Flynn and Leonhart to testify that the customary method of payment for VFA was a commission override because neither witness could cite an example in the insurance industry of an agent who was compensated on a commission override basis when that agent failed to provide ongoing services in support of an insurance program.  We disagree with Hartford.

We have repeatedly held that expert testimony must be based upon an adequate foundation.  Lawson v. Doe, 239 Va. 477, 482-83, 391 S.E.2d 333, 336 (1990); Clark v. Chapman, 238 Va. 655, 664-65, 385 S.E.2d 885, 891 (1989).  Expert testimony is inadmissible if such testimony is speculative or founded upon assumptions that have no basis in fact.  Countryside Corp. v. Taylor, 263 Va. 549, 553, 561 S.E.2d 680, 682 (2002); John v. Im, 263 Va. 315, 320, 559 S.E.2d 694, 696 (2002); Keesee v. Donigan, 259 Va. 157, 161, 524 S.E.2d 645, 648 (2000); ITT Hartford, 258 Va. at 201, 520 S.E.2d at 359; Tittsworth v. Robinson, 252 Va. 151, 154, 475 S.E.2d 261, 263 (1996); Tarmac Mid-Atlantic, Inc. v. Smiley Block Co., 250 Va. 161, 166, 458 S.E.2d 462, 466 (1995); Gilbert v. Summers, 240 Va. 155, 159-60, 393 S.E.2d 213, 215 (1990).  See also Code §§ 8.01-401.1 and -401.3.

7

We hold that the trial court did not err by admitting the testimony of Flynn and Leonhart. As Leonhart's testimony demonstrates, he was aware of insurance agents who performed services similar to those provided by VFA, and that those agents received commissions even though they did not provide ongoing services. The fact that these agents had written contracts with the insurers does not render the challenged testimony inadmissible. The relevant inquiry is not whether an insurance agent received a commission override for services rendered to an insurance company based upon a provision in a written contract. Rather, the appropriate inquiry in this proceeding based upon a claim of quantum meruit is what is the reasonable value of the services VFA rendered to Hartford? See Marine Dev. Corp. v. Rodak, 225 Va. 137, 140-41, 300 S.E.2d 763, 765 (1983). See also Po River Water & Sewer Co. v. Indian Acres Club, 255 Va. 108, 114, 495 S.E.2d 478, 482 (1998); Ricks v. Sumler, 179 Va. 571, 577, 19 S.E.2d 889, 891 (1942); Hendrickson v. Meredith, 161 Va. 193, 200, 170 S.E. 602, 605 (1933). Relevant to this inquiry is the standard of compensation in the insurance industry for agents who render substantially similar services to insurance companies. We conclude that the challenged expert testimony was based upon an adequate foundation and, therefore, was admissible.

B.

8

VFA sought to recover as damages commissions based on premiums that sales of "The Package" would potentially generate during the ten-year period covering 2001 through 2010. Prior to trial, Hartford filed a motion in limine seeking to prohibit the admission of any evidence of damages based upon the loss of future commissions. Hartford also filed a pretrial motion for partial summary judgment against VFA's claims for damages based upon the loss of future commissions. The circuit court denied the motions.

During the trial, Thomas R. Fauerbach, an actuary who qualified as an expert witness, was permitted to opine that even though Hartford and MedPro had discontinued jointly marketing "The Package," MedPro could create a "new package" of insurance products for dentists and market that product in the future with another insurer. Nonetheless, Fauerbach opined that over the ten-year period, Hartford could realize over $250,000,000 in future premiums from the potential future sale of business policies to dentists throughout the United States.

Fauerbach made his projections of future premiums based upon numerous assumptions. He assumed that MedPro and Hartford would continue to jointly market "The Package," even though at the time of trial that assumption was factually

incorrect. Fauerbach's projections were also based upon MedPro's ability to obtain another national partner.

At the conclusion of VFA's case-in-chief, Hartford renewed its motion for partial summary judgment. Hartford asserted, for several reasons, that VFA was not entitled to recover as damages the reasonable value of services associated with the future sales of "The Package." The circuit court granted the motion, holding that to the extent VFA could recover damages in quantum meruit for the future premiums, VFA would have to file subsequent lawsuits to recover those damages.

Hartford argues that Fauerbach's testimony was based upon speculative projections and, therefore, his testimony regarding future premium income was not admissible. Continuing, Hartford contends that even though the circuit court concluded at the end of VFA's case-in-chief that VFA could not recover damages based upon the future premiums, Hartford nonetheless is entitled to a new trial because that testimony may have improperly influenced the jury. In its appeal, VFA argues that Fauerbach's testimony was admissible and that VFA was entitled to recover the reasonable value of future premiums.

As we have already stated, expert testimony is inadmissible if it is speculative or founded on assumptions

that have an insufficient factual basis.  Countryside, 263 Va. at 553, 561 S.E.2d at 682; John, 263 Va. at 320, 559 S.E.2d at 696; Keesee, 259 Va. at 161, 524 S.E.2d at 648; ITT Hartford, 258 Va. at 201, 520 S.E.2d at 359; Tittsworth, 252 Va. at 154, 475 S.E.2d at 263; Tarmac, 250 Va. at 166, 458 S.E.2d at 466; Gilbert, 240 Va. at 159-60, 393 S.E.2d at 215.  Clearly, Fauerbach's projection of more than $250 million in future premiums from Hartford's sale of insurance policies to dentists during the next 10 years was speculative because it was subject to the significant unknown variable whether MedPro would enter into a future bargain with another national insurance carrier.  Therefore, we hold that VFA failed to produce sufficient evidence that would have permitted the jury to award it damages, based upon quantum meruit, for future premium income that "The Package" potentially might generate.[*]

Additionally, as we have already stated, the circuit court granted Hartford's renewed motion for partial summary judgment on this claim.  As Hartford concedes, the circuit court instructed the jury as follows:  "The Court has determined as a matter of law that in arriving at the reasonable value of the services performed by VFA for

---

[*] In view of this holding, we need not consider VFA's argument that the circuit court erred by ruling that VFA would be required to file separate additional lawsuits to recover damages for its purported loss of future premium income.

11

Hartford, you shall consider only actual premiums received by the plaintiff and you shall not consider any projections of future premiums."

The jury was properly instructed that it could not consider the evidence of future premium projections. And, as we have consistently held, when the jury is properly instructed, we must conclude that the jury followed the instructions of the court. Green v. Young, 264 Va. 604, 611, 571 S.E.2d 135, 139 (2002); Emmett v. Commonwealth, 264 Va. 364, 371, 569 S.E.2d 39, 44 (2002), cert. denied, ___ U.S. ___, 123 S.Ct. 1586 (2003); Beavers v. Commonwealth, 245 Va. 268, 280, 427 S.E.2d 411, 420 (1993); Hall v. Commonwealth, 233 Va. 369, 375 n.*, 355 S.E.2d 591, 595 n.* (1987); LeVasseur v. Commonwealth, 225 Va. 564, 589, 304 S.E.2d 644, 657 (1983). Therefore, we hold that Hartford's arguments regarding the purportedly prejudicial impact of this testimony are without merit.

C.

At the conclusion of the trial, the jury awarded VFA $1,230,000. The jury returned the following verdict: "On plaintiff's claim for implied contract (quantum meruit): For plaintiff and against defendant ITT Hartford Group, Inc. in an amount equal to a 3% commission on premiums of $41,000,000." Hartford argues that the circuit court erred in refusing to

12

set aside the verdict or grant remittitur because there was no credible evidence to support the jury's finding that Hartford actually received $41,000,000 in premiums as of the date of trial. We disagree.

VFA presented sufficient evidence to the jury, including the actual written amount of premium income for each year that "The Package" was marketed, that would have permitted the jury to find that Hartford had received $41,000,000 in premiums as of the date of trial. The jury was properly instructed that VFA was not required to prove the exact amount of its damages, but that VFA was required to produce sufficient facts and circumstances to permit the jury to make a reasonable estimate. And, we note, Hartford did not object to this instruction.

### D.

We find no merit in Hartford's argument that Flynn and Leonhart should not have been permitted to testify as expert witnesses because their testimony was purportedly cumulative. As Hartford correctly states in its brief, the circuit court has broad discretion to impose limits on the number of expert witnesses. We conclude that the circuit court did not abuse that discretion.

### E.

13

The circuit court entered a scheduling order dated January 28, 2002. Paragraph 3 of the scheduling order states:

> "Experts. The parties have previously designated experts. Neither party may designate additional or substitute experts except by leave of Court for good cause shown. Plaintiff may amend or supplement its expert designations no later than April 15, 2002, if occasioned by information discovered since July 5, 2001. Defendant may amend or supplement its expert designations no later than May 15, 2002, if occasioned by information discovered since July 5, 2001."

Hartford filed a motion for leave of court to designate an additional expert witness. Hartford asserted in its motion that VFA had amended its expert designations and presented a "new damage theory." VFA opposed Hartford's motion for leave of court to designate an additional expert witness and asserted that its theory of damages had not changed.

The circuit court denied Hartford's motion by order. The circuit court's decision to deny Hartford's motion to designate an additional expert witness was a matter within the exercise of the court's discretion and, based upon the record before this Court, we hold that Hartford failed to demonstrate that the circuit court abused its discretion. Accordingly, Hartford's argument is without merit.

## IV.

Hartford's remaining arguments are without merit. And, in view of our holding that Fauerbach's opinions regarding

14

Hartford's future premium income were speculative, we need not consider VFA's remaining assignments of error.

Accordingly, we will affirm the judgment of the circuit court.

Record No. 022659 – <u>Affirmed</u>.
Record No. 022663 – <u>Affirmed</u>.