# CIRCUIT COURT OF THE CITY OF RICHMOND

Stephen D. Kline

v.

General Motors Corp.
and Whitlow Chevrolet Corp.

December 31, 2003

Case No. LM-2861

BY JUDGE T. J. MARKOW

This case comes on the plaintiff's Motions to Exclude Defendant's expert witnesses, Erick H. Knox and William W. McMillan. The motions are based upon plaintiff's assertions that the opinions of these experts are unreliable and/or beyond the competence of the expert. To determine the opinions to be offered, their basis, and the witnesses' training and experience, their proposed testimony was presented ore tenus, supported, and opposed by memoranda and argument. As each witness has different expertise and opinions, their testimony will be considered separately. Considered first is the proposed testimony of Erick H. Knox.

The basic facts in this case are as follows. Plaintiff was driving his 1999 Chevrolet Silverado about 30 to 40 miles per hour when he began to brake for a stoplight. He claims that during the braking, his seat slid forward causing his braking to become more severe and the stop to occur abruptly. During this stop, plaintiff claims that his right knee struck the knee bolster, the lower part of the dashboard. He did not claim to suffer immediate pain but three days later saw a doctor about a swollen knee and ten days later was treated for back pain. His medical experts will testify that the incident caused a meniscal tear to the right knee and permanent injury to his back. Dr. Knox's opinions do not address the back injury though his designation suggests it would.

*Erick H. Knox, Ph. D.*

Dr. Knox has earned degrees as a bachelor, master, and Ph. D. in Biomedical Engineering.

General Motors intends to have Dr. Knox testify concerning the following areas: (1) the forces and their extent and direction acting on the plaintiff's body in the incident; (2) the mechanism of action required to cause a tear of the meniscus of the knee; (3) an opinion that the force and the nature of plaintiff's impact with the knee bolster was insufficient to cause a tear to the meniscus in his right knee.

Section 8.01-401.3 of the Code of Virginia permits the use of expert testimony if it: "will assist the trier of fact to understand the evidence or to determine a fact in issue."

"Such testimony cannot be speculative or founded upon assumptions that have an insufficient factual basis." *Tittsworth v. Robinson*, 252 Va. 151, 154 (1996). Where testing is done, the conditions must be substantially similar to those involved in the incident. See *Tittsworth* at 154. Experts are also limited to their fields of expertise, and only medical doctors may render an opinion concerning causation of a particular human injury as such opinions constitute a part of the practice of medicine. *John v. Im*, 263 Va. 315 (2002); *Combs v. Norfolk and W. Ry.*, 256 Va. 490 (1998).

Applying these principles, Dr. Knox may testify to the nature of the forces involved, i.e., the direction of the force, the means of determining the amount of the force (the physical laws and factors for determining the amount of force), and the mechanism(s) involved in causing a meniscal tear, i.e., compression and torsion.

More problematic, is whether Dr. Knox can testify as to the amount of force that he calculated from his testing and his conclusion that the amount of force and the mechanism of injury could not have resulted in the meniscal tear to plaintiff's knee.

Dr. Knox conducted tests using two different trucks, which were similar to the plaintiff's, in an attempt to determine the amount of force involved in the plaintiff's impact with the knee bolster.

In his tests, Dr. Knox operated the vehicles himself and also utilized a person of similar size as the plaintiff. The driver operating at 30 to 40 miles per hour would attempt a stop having manually released the seat to allow it to move forward on its track.

From these tests, Dr. Knox determined that the force generated with the knee impact was 0.5 to 1 g, which he concludes is the force that people are subjected to in everyday activities.

This means of determining the amount of force involved in an incident is a logical and acceptable method and is, therefore, admissible as evidence. Whether it was applied properly is the subject of credibility, the sole province of a jury.

Defendant is working at a disadvantage as it does not have access to the vehicle in question as it was disposed of by the plaintiff before suit was filed. Nevertheless, the description of the vehicles used, the methods employed, and the type of calculations utilized lead the court to conclude that the tests were substantially similar to the plaintiff's incident, and the testimony regarding the amount of force involved is admissible.

The final issue is whether Dr. Knox can opine that the meniscal tear could not have been caused by this incident? He cannot!

To reach that conclusion, the court could rely on those Supreme Court decisions which hold that such an opinion constitutes the practice of medicine and is reserved for physicians. It need not do so here.

A biomedical engineer is certainly competent to testify to the mechanics of action of the body and, to some extent, the points at which various body parts cannot function or can become injured, e.g., a certain amount of force concentrated on the forearm is sufficient to cause it to fracture. To opine, however, that a certain amount of compression and torsion applied to the knee is required to tear a meniscus requires knowledge of the physiological composition of a meniscus and its strengths and weaknesses. There is no basis to find that Dr. Knox's training included these subjects. Further, the witness would be required to have such information concerning the meniscus of the plaintiff in this case, as his knee joint was already compromised by prior injury and/or a degenerative process.

Dr. Knox testified that he cannot say how much force is necessary to tear a meniscus as he could find no authority on this.

Dr. Knox is precluding from giving testimony that the force(s) he calculated in this case were not sufficient to cause the meniscal tear to the plaintiff's knee. He will otherwise be permitted to give testimony consistent with the decisions in the opinion and order.

### *William W. McMillan*

Mr. McMillan, trained as an electrical and a mechanical engineer, is an employee of General Motors and specializes in motor vehicle seat design and manufacture. Mr. McMillan is also involved in serving as an expert witness for General Motors in litigation.

He has performed tests on seats of the type found in the plaintiff's vehicle and is offered to opine that the seat was not unreasonably dangerous, that it

slid forward with the plaintiff because of misuse that caused a part to break.

Plaintiff moves that his testimony be precluded because the tests which form the basis of his opinions are not substantially similar to the uses employed by the plaintiff and that all variables were not considered.

The court agrees with the plaintiff.

In his tests, Mr. McMillan caused the seat failure by removing a seat similar to the plaintiff's, installing it on a test stand, and forcing it backward rapidly with the seat-back bar raised. He testified that the seat was slammed backward using pressure from his feet. His tests failed to produce a break in a plastic component which was found to be broken on the plaintiff's seat. Mr. McMillan stated that he cannot opine whether the plastic part failed from misuse or a defect as he is not a "plastics expert."

His testing did not reproduce conditions that were substantially similar to that of normal use of a seat nor did it consider all variables.

The plaintiff's Motion to Exclude the testimony of William W. McMillan is sustained.