520

## CIRCUIT COURT OF ROCKINGHAM COUNTY

Judson S. Goodloe

v.

Philip H. Sharpe,
personal representative
of the estate of
Samuel H. Sharpe

May 15, 2003

Case No. CL00-12253

BY JUDGE JOHN J. MCGRATH, JR.

This matter is before the Court on Plaintiff's Motion in Limine to preclude testimony from a treating orthopedic surgeon relating to causation of Plaintiff's injury and diagnoses which had not been made to a reasonable degree of medical certainty.

This issue arises because Defendant has designated Plaintiff's treating orthopedic surgeon as an expert witness for the Defendant. The Defendant has taken a *de bene esse* deposition of the orthopedic surgeon and has interrogated him at length concerning, *inter alia*, four passages in his medical records. These passages read as follows:

> I. It is possible that he is suffering from severe biceps tendinitis and subsequent rupture during his rehab program. He asked whether this occurred during the MVA and I told him I could not say with any certainty that this indeed was the cause.

(December 8, 2000, Office Note.)

II. He almost certainly ruptured his biceps this past May while he was lifting a heavy bag and had sudden sharp pain in the exterior aspect of the right arm.

(December 8, 2000, Office Note.)

III. I am not certain whether he will require surgery at this time. I cannot say with any certainty whether the rotator cuff tear occurred at the time of his accident or whether it preceded it, particularly since my first visit with him was more than a year following his injury.

(January 5, 2001, Office Note.)

IV. [M]uch of his pain appears to be coming from the neck itself, and the diagnostic injection certainly did not localize the shoulder as a major source of the pain. I reiterated that I could not be certain whether the rotator cuff tear occurred at the time of his accident.

(February 21, 2001, Office Note.)

The Plaintiff's theory for excluding this testimony is two-fold: (1) Section 8.01-399(B) of the Code of Virginia, as amended effective July 1, 2002, precludes a treating physician who is called as an expert by the opposing party from providing *any* opinion on causation, and (2) to the extent the treating physician is offering "diagnoses," those "diagnoses" involved in this Motion are not given to a "reasonable degree of medical probability," as required by § 8.01-399(B).

This Court last addressed this issue in *McCoy v. Gibson*, 52 Va. Cir. 400 (2000). Since the decision in *McCoy v. Gibson*, *supra*, no appellate decision has addressed this issue, but two new circuit court opinions have been published, *Bailey v. Falls*, 50 Va. Cir. 481 (1999) (allowing adverse opinion testimony from a treating physician), and *McCaffrey v. Virginia Women's Center, Inc.*, 59 Va. Cir. 266 (2002) (prohibiting treating physician from giving expert opinions adverse to his patient), and § 8.01-399 has been substantively amended.

Prior to July 1, 2002, § 8.01-399 of the Code of Virginia read, *inter alia*:

A. Except at the request or with the consent of the patient, no duly licensed practitioner of any branch of the healing arts shall be required to testify in any civil action, respecting any information which he may have acquired in attending, examining, or treating the patient in a professional capacity.

B. Notwithstanding subsection A, when the physical or mental condition of the patient is at issue in a civil action, facts communicated to, or otherwise learned by, such practitioner in connection with such attendance, examination, or treatment shall be disclosed but only in discovery pursuant to the Rules of Court or through testimony at the trial of the action.

On July 1, 2002, subsections A and B were amended by the Legislature, with subsection — undergoing major and substantive changes. The new subsections of § 8.01-399 now read as follows:

A. Except at the request or with the consent of the patient, or as provided in this section, no duly licensed practitioner of any branch of the healing arts shall be required to testify in any civil action, respecting any information that he may have acquired in attending, examining, or treating the patient in a professional capacity.

B. If the physical or mental condition of the patient is at issue in a civil action, the diagnosis or treatment plan of the practitioner, as documented in the patient's medical record, during the time of the practitioner's treatment, together with the facts communicated to, or otherwise learned by, such practitioner in connection with such attendance, examination, or treatment shall be disclosed but only in discovery pursuant to the Rules of Court or through testimony at the trial of the action. . . . Only diagnosis offered to a reasonable degree of medical probability shall be admissible at trial.

I. *Does § 8.01-399(B) permit a treating physician to testify on "causation" over the objection of his patient?*

Plaintiff argues that the Legislature made a conscientious choice to preclude a treating physician from being forced to testify concerning causation because the amended § 8.01-399 only permits testimony from a treating

physician relating to "facts" and "diagnosis." Plaintiff states that "causation" is conspicuous by its absence in § 8.01-399, and the Legislature clearly would have included such an important exception to the physician-patient privilege if it had intended such a result.

The difficulty with this position, however, is that it is a well accepted rule of statutory construction that the Legislature is presumed to act with full knowledge of the Supreme Court's interpretation of the law. *E.g., Waterman v. Halverson*, 261 Va. 203 (2001); *Dodson v. Potomac Mack Sales & Service, Inc.*, 241 Va. 89 (1991).

The Supreme Court of Virginia has recently ruled in two cases that "causation" is an integral part of a medical diagnosis. *John v. Im*, 263 Va. 315 (2002), and *Combs v. Norfolk & Western Ry.*, 256 Va. 490 (1998).

In *Combs, supra*, the Supreme Court unequivocally held:

> The practice of medicine includes the diagnosis and treatment of human physical ailments, conditions, diseases, pain, and infirmities. *See* Code § 54.1-2900. The term "diagnose" is defined as "to determine the type and cause of a health condition on the basis of signs and symptoms of the patient." *Mosby's Medical Dictionary* 480 (5th ed. 1998). *Thus, the question of causation of a human injury is a component part of a diagnosis, which in turn is part of the practice of medicine.*

*Id.* at p. 496 (emphasis added).

In *John v. Im, supra*, the Supreme Court similarly held that "an opinion concerning the causation of a particular physical human injury is a component of diagnoses which is part of the practice of medicine." *Id.* at 321. *See also Norfolk & Western Ry. v. Keeling*, 265 Va. 228 (2003).

II. *Were the diagnoses involved here admissible under the § 8.01-399(B) "reasonable degree of medical probability" test?*

Since "causation" is part of a "diagnosis," a treating physician may be compelled to provide expert evidence on the issue of causation. However, that expert opinion on causation must be given to "a reasonable degree of medical probability" to be admissible at trial under the terms of § 8.01-399(B). Applying this standard to the individual medical records and deposition testimony concerning each statement, an appropriate ruling can be made on each statement.

*Statement I*

> It is possible that he is suffering from severe biceps tendinitis and subsequent rupture during his rehab program. He asked whether this occurred during the MVA and I told him I could not say with any certainty that this indeed was the cause.

(December 8, 2000, Office Note.)

This office note is clearly a "diagnosis" which is not given to a "reasonable degree of medical probability." The note on its face refers to "possibility" and the admission that "I [the physician] told him I could not say with any certainty that this indeed was the cause." Therefore, the Motion in Limine relating to this statement is granted.

*Statement II*

> He almost certainly ruptured his biceps this past May while he was lifting a heavy bag and had sudden sharp pain in the exterior aspect of the right arm.

(December 8, 2000, Office Note.)

This statement is clearly a diagnosis of a medical condition including the element of causation. (See Section I, *supra*.) The questions is whether "almost certainly" reaches the level of "a reasonable degree of medical probability" required by § 8.01-399(B) of the Code of Virginia. Although the Courts and the bar tend to use "reasonable degree of medical certainty" and "reasonable degree of medical probability" interchangeably, (*e.g.*, *Poliquin v. Daniels*, 254 Va. 51 (1997); *Schwartz v. Brownlee*, 253 Va. 159 (1997)), there may well be a difference.

If there is a distinction between a "certainty" and a "probability," it has to be assumed by the clear import of the language that a "certainty" requires a higher degree of proof or assurance than a "probability." Therefore, the diagnoses, which were made to a level of "almost certainty," may or may not reach the level required by the standard of "reasonable degree of medical probability;" however, it certainly, by its very terms, does not reach the level of a "reasonable degree of medical certainty."

However, in his deposition, Dr. David Kahler, the treating orthopedist, elaborated on his diagnosis. Unlike his office notes, the doctor's testimony is replete with uncertainty. For example, Dr. Kahler testified:

A. And I surmised at that point that perhaps the episode he had in May where he was lifting the heavy bag and then felt a snap had been — that tendon had ruptured, although I was not certain that that was actually the case. . . .

Q. Did he ask you how this occurred? In other words, did he ask you any questions about B

A. Yes, he did. And I told him I had — there's no way I could tell precisely how it had occurred, only that it had occurred.

(Deposition transcript at pp. 18-19.)

Given the totality of the evidence concerning Dr. Kahler's opinion on the causation of the ruptured biceps, this diagnosis of causality does not rise to the level of "reasonable degree of medical probability" required by § 8.01-399(B). Therefore, the Motion in Limine to preclude Statement II and related testimony is granted. However, the factual statement by the Plaintiff that he was lifting a heavy bag in May 2000 and felt a sudden sharp pain in his right arm may come into evidence as factual statements.

### Statement III

I am not certain whether he will require surgery at this time. I cannot say with any certainty whether the rotator cuff tear occurred at the time of his accident or whether it preceded it, particularly since my first visit with him was more than a year following his injury.

(January 5, 2001, Office Note.)

For the reasons set forth in the discussion of Statements I and II, *supra*, this diagnosis of causation is not made with the degree of "certainty" or "probability" required by § 8.01-399(B). Therefore, the Motion in Limine to preclude Statement III and related testimony is granted.

### Statement IV

[M]uch of his pain appears to be coming from the neck itself, and the diagnostic injection certainly did not localize the shoulder as a major source of the pain. I reiterated that I could

not be certain whether the rotator cuff tear occurred at the time
of his accident.

(February 21, 2001, Office Note.)

The first portion of this statement, *i.e.*, the pain appears to be coming from the neck, and the diagnostic injection certainly did not localize the shoulder as a major source of pain, is a medical diagnosis given with the level of certainty required by § 8.01-399(B); therefore, the Motion in Limine is denied as regards the first sentence of this Office Note.

The second portion of the Office Note relates to the physician's inability to reach a diagnosis of causation with any degree of certainty. Therefore, the Motion in Limine relating to this portion of the Office Note will be granted.

To the extent this decision deviates from the Court's earlier decision in *McCoy v. Gibson*, 52 Va. Cir. 400 (2000), the Court finds that the recent amendments to § 8.01-399(B) requires such a result.

The Clerk is directed to send attested copies of this Opinion and Order to Roger A. Ritchie, Sr., Esquire, counsel for the plaintiff, and to Daniel L. Fitch, Esquire, counsel for the defendant.