# COURT OF APPEALS OF VIRGINIA

Present: Judges AtLee, Causey and Friedman
Argued at Norfolk, Virginia

JEFFREY LAMONT HARRIS, S/K/A
  JEFFREY LAMONTE HARRIS

                                                  MEMORANDUM OPINION[*] BY

v.      Record No. 0504-22-1              JUDGE RICHARD Y. ATLEE, JR.
                                                     MAY 23, 2023

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
John W. Brown, Judge

Michelle C.F. Derrico, Senior Appellate Attorney (Virginia Indigent
Defense Commission, on briefs), for appellant.

Rebecca M. Garcia, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

Jeffery Lamont Harris appeals the Circuit Court of the City of Chesapeake's ("trial court")

judgment revoking thirteen years and resuspending nine years of his previously-suspended

sentences for conspiracy to distribute cocaine; the manufacture, sale, distribution, or possession with

intent to distribute cocaine; and grand larceny. Harris contends that the trial court erroneously

admitted testimonial hearsay at the revocation hearing in violation of his due process right to

confrontation under the Fourteenth Amendment. Harris also argues that the trial court "failed to

give proper weight to mitigation evidence" in imposing his sentence. For the following reasons, we

affirm the trial court's judgment.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413.

## I. BACKGROUND

On appeal, "we view the record in the light most favorable to the Commonwealth because it was the prevailing party below." *Blowe v. Commonwealth*, 72 Va. App. 457, 461 (2020) (quoting *Delp v. Commonwealth*, 72 Va. App. 227, 230 (2020)). In October 2007, the trial court convicted Harris of conspiracy to distribute cocaine; the manufacture, sale, distribution, or possession with intent to distribute cocaine; and grand larceny. The trial court sentenced him to a total of twenty years' incarceration with sixteen years suspended, conditioned upon good behavior, supervised probation, and payment of restitution. Subsequently, Harris had his supervised probation transferred from Virginia to Texas.

On August 5, 2014, the trial court found that Harris had violated the conditions of his probation because he had a new heroin possession conviction in Texas and he failed to complete an inpatient drug treatment program.[1] The trial court revoked sixteen years of Harris's suspended sentences and resuspended thirteen years on the same conditions as previously ordered.

On June 11, 2019, Harris's probation officer in Texas issued a major violation report alleging that Harris had violated probation Conditions 1, 6, 8, 10, and 11.[2] The report stated that Harris had repeatedly tested positive for illicit drugs. In addition, he failed to submit to urine drug analysis, complete a substance abuse program, "appear in court for [a] new felony case," and

---

[1] In an August 22, 2013 letter, Harris's probation officer also alleged that Harris had failed to pay restitution as required.

[2] Condition 1 required Harris to "obey all Federal, State, and local laws and ordinances." Condition 6 required that he "follow the probation and Parole Officer's instructions" and be "truthful, cooperative, and report as instructed." Condition 8 required Harris to refrain from unlawful "use, possess[ion] or distribut[ion of] controlled substances or related paraphernalia." Condition 10 prohibited Harris from changing his residence without his probation officer's permission. Condition 11 prohibited Harris from absconding from supervision.

comply with GPS tracking and curfew requirements. On August 20, 2019, the trial court issued a capias based on the allegations.[3]

At a revocation hearing on March 24, 2022, the Commonwealth introduced Harris's VCIN[4] record and certified conviction orders reflecting that he had incurred seven criminal convictions while on probation, including one for possession of a controlled substance. Chesapeake Probation and Parole Officer Joshua Garris testified that although he did not personally supervise Harris, Garris had received the Texas probation officer's major violation report and forty-three pages of case notes[5] detailing "what transpired while [Harris] was on probation in Texas."

When the Commonwealth asked Garris how the information he had reviewed demonstrated that Harris had violated Condition 6, Harris objected on due process confrontation grounds. Citing *Cox v. Commonwealth*, 65 Va. App. 506 (2015), Harris asserted that he had a "continuing objection" to Garris's testimony because Garris "did not personally supervise" him and "it will probably be the same testimony for different reasons under the other conditions." The Commonwealth countered that Garris's testimony was admissible under the "reliability or balancing test" addressed in *Henderson v. Commonwealth*, 285 Va. 318 (2013), and "[i]t's not feasible to have out-of-court probation officers come to every hearing." The trial court deferred

---

[3] Harris's probation officer in Virginia subsequently filed two letters supplementing the major violation report: the first included the Texas probation officer's notes documenting Harris's positive drug screens, and the second stated that Harris had incurred seven criminal convictions in Texas.

[4] As we have previously recognized, "VCIN" is an abbreviation for "Virginia Criminal Information Network." *Ramsey v. Commonwealth*, 65 Va. App. 694, 695 (2015). At trial, Harris's VCIN record established that he had multiple previous convictions for drug possession and distribution.

[5] The trial court described that Texas probation officer's case notes as "daily notes that have been typed by somebody reflecting the interaction between the probation officer who wrote this or typed it and the defendant[.]"

ruling on the objection pending further testimony because he did not know "what [wa]s going to be said."

Garris testified without objection that, based on the Texas probation officer's case notes, Harris had violated Condition 6 by failing to report to probation as instructed thirteen times. In addition, Harris did not complete mandatory substance abuse treatment. Harris subsequently objected to Garris testifying concerning Harris's alleged non-compliance with GPS monitoring and curfew requirements "for the same reasons" and because the testimony would be speculative. The trial court sustained Harris's objections but ruled that the Commonwealth could ask questions about whether Harris had reported to probation as instructed. Without objection, Garris reiterated his testimony that the Texas probation officer's notes reflected that Harris had violated Condition 6 by repeatedly failing to report to probation.

Concerning Harris's alleged violation of Condition 8, Garris testified that the Texas probation officer's case notes stated that Harris had thirteen positive drug tests and one refusal to submit to drug testing. Harris objected to Garris's testimony based on "the same continuing objection." In addition, Harris argued that under *Cox*, a probation officer's testimonial hearsay regarding a positive drug test was inadmissible. The trial court asked Garris whether the drug tests were performed at the Texas probation office or "someplace else." Garris testified that a Texas probation officer had watched Harris be tested at the probation office; the trial court overruled Harris's objection.[6]

At the conclusion of the Commonwealth's evidence, Harris moved to strike the Conditions 1, 6, and 8 violation charges "based on . . . the continuing objection" to "Officer Garris'[s]

_____

[6] Harris also objected when the Commonwealth moved to introduce the Texas probation officer's notes into evidence. The trial judge stated that he had not reviewed the notes and said, "I think we got the testimony out of [the notes] from the standpoint of the different conditions that have been alleged." The trial court took Harris's objection under advisement but ultimately did not render a ruling. The record does not reflect that the notes were introduced as an exhibit.

testimony."[7]  The trial court found that Harris had failed to report as instructed thirteen times, tested positive for illegal drugs thirteen times, refused to submit to drug testing once, and "admitted using" controlled substances at least twice.  Therefore, the trial court found that "[t]here's some corroboration" of the allegations contained in the Texas probation officer's notes and major violation report.  Accordingly, the trial court denied the motion to strike for violating Conditions 1, 6, and 8 and found that Harris had violated those conditions.[8]

The trial court considered discretionary sentencing guidelines, which recommended a sentence of active incarceration between one year and three months to four years.  The Commonwealth acknowledged that Harris had paid the full amount of restitution but argued that his "new convictions alone" justified a sentence at the high end of the guidelines.  Harris introduced a letter from a representative at Pyramid Healthcare—a substance abuse rehabilitation facility— stating that Harris met "the criteria" for admission to inpatient drug and alcohol abuse treatment.  Harris's counsel argued that Harris had a "drug problem" and asked the trial court to impose a sentence consistent with the low end of the guidelines.  At allocution, Harris testified that he suffered from "some drug issues" and asked the trial court to place him in the drug rehabilitation program rather than impose active incarceration.

The trial court found that Harris's payment of the full amount of restitution was irrelevant because Harris's nonpayment of restitution was the basis of his prior revocation, not the current revocation.  It found that Harris had repeatedly violated the conditions of probation by failing to complete drug treatment, using drugs, and accruing new criminal convictions.  While the trial court

---

[7] During argument on the motion to strike, Harris stated, "I'm assuming the Court overruled my objection when the officer was testifying to Conditions 6, 8."  The trial court did not respond to that statement.

[8] The trial court dismissed related charges alleging Harris had violated Conditions 10 and 11.

"recognize[d]" that "Harris wants to get treatment," it found that Harris had demonstrated that he was either unable or "didn't want to get the help" that he now requested. Accordingly, the trial court revoked thirteen years of Harris's previously-suspended sentences and resuspended nine years. Harris appeals.

## II. ANALYSIS

### A. *The trial court did not violate Harris's confrontation rights by admitting Garris's testimony.*

Harris contends that the trial court erred by admitting Officer Garris's testimony "regarding notes from a probation office in Texas" because it violated Harris's right to confrontation under the Due Process Clause of the Fourteenth Amendment. Relying on *Cox*, Harris argues that "the Texas case notes were not sufficiently reliable" because "no evidence" established how they were created. We disagree.

On appeal, we generally review a trial court's decision to admit evidence at a revocation hearing for an abuse of discretion. *Jenkins v. Commonwealth*, 71 Va. App. 334, 342 (2019). But "[w]hether a defendant's due process rights are violated by the admission of evidence is a question of law, to which we apply a de novo standard of review." *Johnson v. Commonwealth*, 296 Va. 266, 274 (2018) (quoting *Henderson*, 285 Va. at 329). "[I]n conducting our *de novo* analysis, this Court 'is bound by the trial court's findings of historical fact unless "plainly wrong" or without evidence to support them.'" *Cody v. Commonwealth*, 68 Va. App. 638, 656 (2018) (quoting *McGee v. Commonwealth*, 25 Va. App. 193, 198 (1997) (en banc)). Moreover, "the burden is on the appellant to present to us a sufficient record from which we can determine whether the trial court has erred in the respect alleged by appellant." *Bay v. Commonwealth*, 60 Va. App. 520, 528 (2012) (quoting *Justis v. Young*, 202 Va. 631, 632 (1961)).

The Due Process Clause of the Fourteenth Amendment[9] includes a "limited right of confrontation . . . applicable to parole and probation revocation proceedings." *Henderson*, 285 Va. at 325-26. Because a probation revocation proceeding occurs after a "'criminal prosecution has ended in a conviction,' the defendant 'is not entitled to the "full panoply" of constitutional rights to which he was entitled at trial.'" *Jenkins*, 71 Va. App. at 343 (quoting *Henderson*, 285 Va. at 325). Nevertheless, testimonial hearsay is subject to the limited confrontation right, and it is only admissible if the "hearing officer specifically finds good cause for not allowing confrontation." *Henderson*, 285 Va. at 326 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972)).[10]

There are two overlapping tests for "determining whether the denial of the right to confrontation" was supported by "good cause." *Id.* at 327. The "balancing test" "requires the court to weigh the interests of the defendant in cross-examining his accusers against the interests of the prosecution in denying confrontation." *Id.* at 327-28. The "reliability test" permits the

---

[9] The Fourteenth Amendment of the Constitution of the United States provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV.

[10] In their briefs, the parties do not dispute that the Texas probation officer's case notes were "testimonial" for purposes of due process confrontation analysis. Harris also does not contend that the trial court erred by failing to state for the record the specific "good cause" it found for denying his confrontation right. Rather, both litigants concede that if a trial court fails to explicitly find good cause to dispense with a probationer's confrontation right, then an appellate court will "make an independent review of the record to ascertain whether there was sufficient credible evidence" to support such a finding. Although "[w]e do not permit litigants 'to define Virginia law by their concessions,'" *Butcher v. Commonwealth*, 298 Va. 392, 395 (2020) (quoting *Daily Press, Inc. v. Commonwealth*, 285 Va. 447, 454 n.6 (2013)), "we may accept the concession—not as a basis for deciding the contested issue of law, but as a basis for not deciding it." *Logan v. Commonwealth*, 47 Va. App. 168, 172 n.4 (2005) (en banc). Accordingly, we do not address whether the case notes were testimonial or the trial court failed to make an adequate finding of good cause. *Cf. Henderson*, 285 Va. at 325 (declining to consider whether trial court failed to articulate finding of "good cause" because that ruling "was not made the subject of any assignment of error on appeal to this Court").

admission of hearsay "if it possesses substantial guarantees of trustworthiness." *Id.* at 327. The

Virginia Supreme Court has held that such guarantees include:

> (1) detailed police reports (as opposed to mere summaries of such reports by probation officers), (2) affidavits or other hearsay given under oath, (3) *statements by the probationer that directly or circumstantially corroborate the accusations*, (4) corroboration of accusers' hearsay by third parties or physical evidence, (5) statements that fall within a well-established exception to the hearsay rule, (6) *evidence of substantial similarities between past offenses and the new accusations that bolsters the accuser's credibility*, and (7) *a probationer's failure to offer contradictory evidence*.

*Johnson*, 296 Va. at 276 (emphases added) (quoting *Henderson*, 285 Va. at 327).[11]

The record here supports the trial court's finding that the Texas probation officer's notes

possessed sufficient guarantees of trustworthiness to render Officer Garris's testimony about

Harris's positive drug tests admissible.[12] At trial, Garris testified that the case notes stated that

---

[11] The dissent argues that we improperly relied on propensity evidence (the similarity of past offenses to new offenses) to establish reliability contrary to Virginia law. While that type of evidence may be impermissible in a criminal trial, it is not prohibited in a probation revocation hearing, which does not have the same protections as a criminal trial. *See, e.g.*, *Jenkins*, 71 Va. App. at 343 ("[O]nce a 'criminal prosecution has ended in a conviction,' the defendant 'is not entitled to the "full panoply" of constitutional rights to which he was entitled at trial.'" (quoting *Henderson*, 285 Va. at 325)). Contrary to the dissent's claim, the Supreme Court of Virginia has expressly authorized the consideration of the "substantial similarities between past offenses and the new accusations." *Henderson*, 285 Va. at 327. In *Johnson*, the Supreme Court held that testimonial hearsay is permissible "if it possesses substantial guarantees of trustworthiness," and one such guarantee is "evidence of substantial similarities between past offenses and the new accusations." *Johnson*, 296 Va. at 276 (quoting *Henderson*, 285 Va. at 327); *see also Saunders v. Commonwealth*, 62 Va. App. 793, 808 (2014) (setting out "evidence of substantial similarities between past offenses and the new accusations" as one example "of an indicia of reliability of testimonial hearsay").

[12] The dissent argues that we should "evaluate the Texas notes to determine the trustworthiness of Garris's testimony," and suggests that we concede as much, even though the notes were not admitted into evidence. While we agree that the Texas notes were the basis for Garris's testimony, we disagree that we can evaluate something that is not in evidence. We agree with the dissent that we review exhibits that are not admitted into evidence when the issue on appeal is the trial court's ruling on the admissibility of that evidence. But the issue before us is not the admissibility of the Texas notes. Although the dissent suggests that we can review the

Harris not only tested positive for illicit drugs, but twice admitted to using them. In addition, Harris's VCIN record, which was separate from the Texas notes, proved that he had multiple convictions for drug possession and distribution, including a recent conviction in Texas. Consequently, Harris's admissions combined with the "substantial similarities between" his past drug offenses and his alleged drug use corroborated the Texas probation officer's notes on that topic. That Harris did not "offer contradictory evidence" to rebut the Texas probation officer's notes alleging Harris's persistent drug use further bolstered their credibility. Moreover, according to Garris's testimony, the Texas notes contained daily notes, reflecting the interactions between the probation officer and Harris. Each entry was dated, included who entered the information, and what time they did so. Thus, though the Texas notes are not police reports, they were detailed reports as opposed to mere summaries by a probation officer.

The record does not support Harris's assertion that Officer Garris testified falsely that the Texas probation officer watched Harris perform the urine drug tests. At trial, Garris testified that the Texas probation officer had watched Harris submit to urine drug screening. Although Harris asserts that the case notes contradict that testimony, we cannot consider evidence that the appellant "failed to submit to the trial court." *John v. Im*, 263 Va. 315, 320 (2002); *see also* Rule 5A:10. Harris's pleadings are not evidence, and he failed to introduce the Texas probation officer's case notes, despite the opportunity to do so. *Cf. John*, 263 Va. at 320 (declining to consider on appeal scientific articles the defendant did not introduce as a trial exhibit); *see also Albert v. Albert*, 38 Va. App. 284, 291 n.2 (2002) (holding child support worksheets were not part of appellate record because they were not introduced into evidence at the support hearing).

Texas notes because the trial court should have reviewed them as part of its gatekeeping role, we disagree. The trial court did not read the Texas notes, and Harris objected to their admission into evidence. The trial court based its decision on the evidence that was presented to it—the parties questioning Garris on the content of the notes. Thus, we too must make our evaluation based on the evidence presented to the trial court.

- 9 -

Furthermore, Harris actually objected when the Commonwealth sought to introduce the case notes into evidence. Therefore, we do not consider them on appeal.

Harris's reliance upon *Cox* is also misplaced. In *Cox*, the trial court admitted at a revocation hearing a probation officer's report containing testimonial hearsay concerning Cox's alleged positive drug screens. 65 Va. App. at 520. The trial court stated that it denied Cox's right to confront the probation officer because it "is very customary" in revocation hearings "that the reports come from another jurisdiction." *Id.* This Court held that the trial court's explicit reasoning "dispel[led] any notion that the trial court made a ruling based upon 'good cause.'" *Id.* And the record contained no basis "for an implied finding that the report contained substantial guaranties of trustworthiness" or "that the interests of the Commonwealth outweighed" Cox's rights. *Id.*

By contrast, the record here supports an implicit finding that the Texas probation officer's notes contained "substantial guarantees of trustworthiness." *Id.* Indeed, the trial court explicitly found that there was "some corroboration" of the Texas probation officer's notes concerning Harris's alleged drug use. As discussed above, the record supports that finding. Moreover, the trial court did not misstate the law in rendering its ruling. Therefore, *Cox* is inapposite.

Finally, to the extent that Harris contends that the trial court erred in admitting Garris's testimony regarding Harris's alleged violation of Condition 6, Rule 5A:18 forecloses our review because Harris did not obtain a ruling from the trial court on that issue. "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "The purpose of th[e] contemporaneous objection requirement [in Rule 5A:18] is to allow the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials." *Creamer v. Commonwealth*, 64 Va. App. 185, 195

- 10 -

(2015). "Specificity and timeliness undergird the contemporaneous-objection rule, animate its highly practical purpose, and allow the rule to resonate with simplicity." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019). "Not just any objection will do. It must be both *specific* and *timely*—so that the trial judge would know the particular point being made in time to do something about it." *Id.* (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)). If a party fails to timely and specifically object, he waives his argument on appeal. *Arrington v. Commonwealth*, 53 Va. App. 635, 642 (2009).

This Court has recognized that counsel may "make a continuing objection to a related series of questions in order to avoid the necessity of repetitious objection." *Rodriguez v. Commonwealth*, 18 Va. App. 277, 286 (1994) (en banc), *aff'd*, 249 Va. 203 (1995). Nonetheless, it is the appellant's "burden to obtain a clear ruling from the trial court" on his timely, specific objection. *Young v. Commonwealth*, 70 Va. App. 646, 657 (2019). Otherwise, "there is no ruling for [the appellate court] to review." *Id.* (alteration in original) (quoting *Williams v. Commonwealth*, 57 Va. App. 341, 347 (2010)).

In this case, Harris objected on due process confrontation grounds when the Commonwealth asked Officer Garris how the Texas probation officer's case notes proved that Harris had violated Condition 6. Although Harris asserted that he had a "continuing objection" to Garris's testimony, the trial court deferred ruling on the objection pending further testimony. Garris then repeatedly testified, without objection, that the Texas probation officer's case notes reflected that Harris had violated Condition 6 by failing to report to probation thirteen times. Harris later stated, "I'm assuming the Court overruled my objection when the officer was testifying to Conditions 6, [and] 8," but the trial court did not respond. Thus, Harris did not obtain a ruling on his objection to Officer Garris's testimony with respect to his alleged violation of Condition 6; therefore, the argument is waived. *Cf. Young*, 70 Va. App. at 657 (holding

- 11 -

defendant failed to obtain a clear ruling from the trial court because he did not renew the objection or seek clarification regarding the purposes for which the challenged evidence was admitted); *see also Fisher v. Commonwealth*, 16 Va. App. 447, 454 (1993) (holding defendant did not obtain ruling from the trial court despite his timely and specific objection).

Accordingly, the record supports the trial court's finding that the Texas probation officer's case notes possessed sufficient guarantees of trustworthiness to render Officer Garris's testimony concerning Harris's positive drug tests admissible. Harris's other arguments are without evidentiary support and *Cox* is inapposite. Accordingly, the trial court's ruling admitting the testimony was not an abuse of discretion.

### B. Sentencing

Harris argues that the trial court abused its discretion in sentencing by failing to consider "mitigating evidence" that Harris had "paid his restitution and court costs" and that "his offenses were the result of his drug addiction." We disagree.

"A trial court has broad discretion to revoke a suspended sentence and probation based on Code § 19.2-306, which allows a court to do so 'for any cause deemed by it sufficient.'" *Keselica v. Commonwealth*, 34 Va. App. 31, 35 (2000) (quoting *Davis v. Commonwealth*, 12 Va. App. 81, 86 (1991)). On appeal, "the trial court's 'findings of fact and judgment will not be reversed unless there is a clear showing of abuse of discretion.'" *Jacobs v. Commonwealth*, 61 Va. App. 529, 535 (2013) (quoting *Davis*, 12 Va. App. at 86).

"[W]hen a statute prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016) (quoting *Alston v. Commonwealth*, 274 Va. 759, 771-72 (2007)). "Criminal sentencing decisions are among the most difficult judgment calls trial judges face." *Id.* at 563. "Because this task is so difficult, it must rest

heavily on judges closest to the facts of the case—those hearing and seeing the witnesses, taking into account their verbal and nonverbal communication, and placing all of it in the context of the entire case." *Id.* Consequently, determining what weight to assign to any mitigating factors presented by a defendant is squarely within a circuit court's purview. *Keselica*, 34 Va. App. at 36. "Barring clear evidence to the contrary, this Court will not presume that a trial court purposefully ignored mitigating factors in blind pursuit of a harsh sentence." *Bassett v. Commonwealth*, 13 Va. App. 580, 584 (1992).

In this case, the record belies Harris's contention that the trial court did not consider his payment of restitution and drug addiction as mitigating evidence during the sentencing hearing. In fact, the trial court expressly considered both circumstances, but concluded that the former was irrelevant and that Harris's persistent drug use and criminal conduct proved that alternative sentencing to a drug rehabilitation program was unsuitable. That the trial court did not reach Harris's desired conclusion does not render its judgment an abuse of discretion.

To the contrary, the evidence established that Harris had an extensive criminal history, including numerous convictions for drug possession and distribution. Furthermore, Harris had accrued seven criminal convictions since his last revocation, including another drug offense. In addition, Harris had repeatedly failed to complete substance abuse treatment and refrain from using illegal drugs, despite the opportunity to do so. Harris's conduct supports the trial court's finding that he was not amenable to rehabilitation.

"The statutes dealing with probation and suspension are remedial and intended to give the trial court valuable tools to help rehabilitate an offender through the use of probation, suspension of all or part of a sentence, and/or restitution payments." *Howell v. Commonwealth*, 274 Va. 737, 740 (2007). "When coupled with a suspended sentence, probation represents 'an act of grace on the part of the Commonwealth to one who has been convicted and sentenced to a term of confinement.'"

- 13 -

*Hunter v. Commonwealth*, 56 Va. App. 582, 587 (2010) (quoting *Price v. Commonwealth*, 51 Va. App. 443, 448 (2008)). Harris squandered the "grace" that had been extended to him by continuing to use illicit controlled substances and engaging in a pattern of drug-related criminal behavior. For these reasons, the trial court revoked thirteen years and resuspended nine years of Harris's previously suspended sentences. That sentence did not exceed the maximum statutorily-prescribed penalties for Harris's underlying convictions and "will not be overturned as being an abuse of discretion." *Minh Duy Du*, 292 Va. at 564 (quoting *Alston*, 274 Va. at 771-72).

## III. CONCLUSION

For the above reasons, we affirm the trial court's judgment.

*Affirmed.*

Causey, J., dissenting.

Harris's right to confrontation under the Due Process Clause of the Fourteenth Amendment[13] was violated by admitting Virginia Probation Officer Garris's hearsay testimony. Garris's testimony consisted of reading from a different Virginia Probation Officer's probation violation report "regarding notes from a probation office in Texas." Harris's probation violation report was "prepared by" another Virginia Probation Officer, not by Garris. Attached to the report were the Texas probation office's notes. Garris never supervised Harris. No one that prepared any of the notes or reports testified at the hearing. Thus, there was no good cause for denying Harris his due process right of confrontation because the challenged evidence did not meet either the reliability or balancing test. Additionally, admission of this hearsay testimony was not harmless error. For these reasons, I respectfully dissent.

Although the majority is correct that the notes prepared by Harris's Texas probation officer ("Texas notes") "were [not] introduced as an exhibit," Officer Garris based most of his testimony exclusively on the Texas notes. Garris testified that "*[t]he Texas probation officer documented* what I counted as 14 drug screens. None of them were negative. All are positive for substances. I have the substances listed and the dates. One of these drug tests was a failure to submit." (Emphasis added). Garris detailed the dates and results of each test, reading from the Texas notes verbatim. As a result, the contents of the Texas notes were admitted as evidence, although the notes themselves technically were not introduced as an exhibit. Thus, we must evaluate the Texas notes to determine whether they "possess[] substantial guarantees of

---

[13] "When confrontation rights are asserted in a revocation proceeding, . . . the rule against hearsay [is] entirely subsumed within the probationer's limited due process right of confrontation." *Henderson v. Commonwealth*, 285 Va. 318, 325 (2013).

trustworthiness" and whether Garris's testimony based on these notes was permissible.[14]

*Henderson v. Commonwealth*, 285 Va. 318, 327 (2013); *see Cox v. Commonwealth*, 65 Va. App. 506, 513, 520 (2015) (reviewing whether "the *probation violation report* is testimonial and *its contents* are therefore subject to his Fourteenth Amendment right to confrontation, unless good cause is shown," and concluding that "the trial court was [not] relying upon good cause when it admitted *the probation violation report*" (emphases added)). The majority concedes as much, concluding that "the record supports the trial court's finding that *the Texas probation officer's case notes possessed sufficient guarantees of trustworthiness* to render Officer Garris's testimony concerning Harris's positive drug tests admissible." (Emphasis added).

_____

[14] The majority claims that "we cannot consider evidence [the Texas notes] that the appellant 'failed to submit to the trial court.'" I disagree. Even though the evidence was not admitted as an exhibit, considering the notes is permissible under the good cause analysis. Trial courts frequently exercise different roles. Two of these roles are its role as factfinder and its role as gatekeeper of the evidence. *See, e.g.*, *Handberg v. Goldberg*, 297 Va. 660, 666 (2019) (differentiating trial court's "gatekeeping" and factfinding functions). The good cause analysis requires the trial court to act in its role as gatekeeper of the evidence. A trial court's gatekeeping role allows and often requires the court to review evidence—that has not been admitted as an exhibit—for its admissibility. For example, trial courts often review written documents *in camera* for their admissibility. The trial court then admits all, parts, or none of the document, but has reviewed the entire document. If a party, on appeal, asks us to review the trial judge's ruling on admissibility of the entire document, this Court, like the trial judge, would review the entire document, although the document was not admitted as an exhibit. *See Currie v. Commonwealth*, 30 Va. App. 58, 66-69 (1999) (discussing how the trial court "conducted an *in camera* review" of reports that were not introduced into evidence as an exhibit). That document then becomes part of the appellate record, and we can review that document because the trial court also reviewed the document for its admissibility, although the document was not admitted as an exhibit. *See id.* (reviewing "sealed materials" that were not introduced as an exhibit to determine whether the materials were "exculpatory in nature" and withholding of the evidence from the defense constituted a *Brady v. Maryland*, 373 U.S. 83 (1963), violation).

Here, the Texas notes are part of the record, which we can review on appeal, even if they were not admitted as an exhibit. The trial court had the opportunity to review the Texas notes. The record shows that the Texas notes were attached to the major violation report filed with the court. At the hearing, the trial judge acknowledged that the notes were in his possession. The trial court *should have* reviewed the Texas notes as part of its good cause analysis to determine whether Garris could testify based on the notes. If it did not do so, it did not perform the requirements of its gatekeeping role.

The Texas notes are the classic example of hearsay that is unreliable. Our Supreme Court

has noted the heightened concern for the reliability of "statements contained within multiple

layers of hearsay." *Henderson*, 285 Va. at 327 (citing *United States v. Lloyd*, 566 F.3d 341, 345

(3d Cir. 2009) ("[O]ut-of-court statements reflecting an adversarial relationship with the accused,

or *containing multiple layers of hearsay, have been recognized as unreliable*." (emphasis added)

(internal citations omitted))).

Here, to establish violations of Condition 8, Garris relied exclusively on the Texas

probation officer's report, contained in a document prepared by another Virginia probation

officer, to provide the basis for his testimony. Garris described the format of the Texas probation

officer's notes: several entries listing the date and name of the person who made the entry.

Garris's testimony contains, at a minimum, two layers of hearsay. The first layer is obvious—

Garris's testimony amounted to a recitation of notes prepared outside of the hearing by a

nonparty declarant. The second layer of hearsay arises out of uncertainty about whether the

administrators of the drug tests and note takers were one and the same. Many different people

created the entries that comprise the Texas notes, inviting confusion about the precise

responsibilities and observations of the authors.[15] Given the lack of clarity about who authored

each entry and the multiple contributors to the Texas notes, it is reasonable to conclude that the

administrator of the drug test reported the results to another person, who entered the results into

the Texas notes, creating hearsay within hearsay. Significantly, there is no evidence that Harris

---

[15] Within the Texas notes, there are entries created by "Misty Arrazola," who Garris stated was Harris's probation officer in Texas, and many other entries created by different named persons. Nine of the entries about Harris's positive drug tests were authored by "System." The entries authored by "System" state that "Kevin Hogans" and "Ronald Roberts" administered the drug tests to Harris. It is unclear who created the entries about the positive drug tests—whether Hogans and Roberts created these entries or told someone else the drug test results, and that other person then created the entries under the username "System."

made any statements to Garris, the other Virginia probation officer, or to any testifying witness at the hearing.

It is the Commonwealth's burden to establish that the evidence possesses substantial guarantees of trustworthiness. *Cox*, 65 Va. App. at 520 n.3 ("[T]he ultimate burden of proof for a probation violation, and consequently a showing of good cause for denying confrontation, remains with the Commonwealth."). The Commonwealth did not satisfy that burden here because there is nothing to prove that the same person who administered the drug tests recorded the results in the notes. Thus, I would treat the testimony about Harris's positive drug tests as containing a minimum of two layers of hearsay. As evidence containing multiple layers of hearsay is inherently unreliable, I would hold that there was not good cause to admit Garris's testimony about Harris's fourteen positive drug tests. Admitting the unreliable testimony violated Harris's rights under the Confrontation Clause.

The "guarantees of trustworthiness" that the majority discusses do not outweigh the unreliability that results from the multiple layers of hearsay. The majority concludes that Harris admitting to his Texas probation officer that he used drugs on two separate occasions, multiple past convictions for drug possession and distribution, and failure to contradict the Texas notes support the conclusion that "the Texas probation officer's notes possessed sufficient guarantees of trustworthiness." None of this evidence substantially guarantees the trustworthiness of the contested testimony.

First, using Harris's admissions as a basis to establish the reliability of Garris's testimony is problematic because these purported admissions come from the very evidence under scrutiny for its trustworthiness. Statements within the contested hearsay testimony itself cannot be used to corroborate that same testimony. Second, the majority uses Harris's past drug-related convictions to establish reliability of the contested testimony using a propensity argument—

because Harris has used and been convicted for drug-related offenses in the past, he likely tested positive for drugs on *these* specific fourteen occasions.[16]  Such an analysis and holding is inconsistent with Virginia caselaw.

The Supreme Court has held hearsay evidence to have substantial guarantees of trustworthiness if there is other evidence corroborating the *specifically alleged conduct*, not instances of the same conduct at a different time.  *See Henderson*, 285 Va. at 330-31 (holding that the reliability test was satisfied to admit hearsay testimony that the defendant participated in a robbery, when the defendant made phone calls from jail that "implied admissions of . . . participation" in that specific robbery and described an event at the robbery scene); *Johnson v. Commonwealth*, 296 Va. 266, 279 (2018) (holding that the reliability test was satisfied to admit statements that the declarants had made to the testifying witness that the defendant had spoken to them, in violation of a condition of his probation, when "the [declarant]s' statements to [the testifying witness] were consistent with statements in . . . text messages" to the declarants, also admitted into evidence).  It has never held that when the only evidence corroborating the hearsay statements were similar past convictions, the contested hearsay possessed substantial guarantees of trustworthiness.  Here, there is no evidence to corroborate the testimony that Harris tested positive for drugs on the fourteen occasions alleged and the only evidence corroborating the testimony are similar past convictions.

Additionally, there is no evidence to establish how the Texas notes were created. Although Garris testified that he believed the notes were created the same way notes are created

---

[16] I do not disagree that one of the factors that weigh in favor of finding that hearsay possesses substantial guarantees of trustworthiness is the similarity between the allegations contained within the hearsay and prior convictions.  Rather, I note that our precedent has never held that past similar convictions alone are enough to establish that hearsay possesses substantial guarantees of trustworthiness.  The Supreme Court has only held that hearsay possesses substantial guarantees of trustworthiness when there was also some evidence to corroborate the specific allegations contained within the contested hearsay.

by Virginia probation officers, the Commonwealth did not establish a foundation for his personal knowledge on this subject. Va. R. Evid. 2:602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). This lack of information in how the Texas notes were created further contributes to their unreliability.

The (at least) two layers of hearsay contained in Garris's testimony, lack of evidence in the record to corroborate the allegation that Harris tested positive for drugs on the specific dates alleged, and the lack of information about how the Texas notes were created all contribute to the unreliability of this testimony.[17] Thus, I would hold that the testimony does not possess substantial guarantees of trustworthiness and does not satisfy the reliability test.

For similar reasons, I would hold that the trial court erred in admitting Garris's testimony about violations of Condition 6.[18] Garris based his testimony on the Texas notes contained

---

[17] The majority relies on the fact that the Texas notes were "detailed reports" as contributing to the trustworthiness of the Texas notes. However, I note that under the caselaw, "detailed *police* reports," not probation reports, contribute to the trustworthiness of the contested hearsay, and the Commonwealth made this concession at oral argument. *Johnson*, 296 Va. at 276 (emphasis added)

[18] I would not hold that Harris's arguments about evidence relating to Condition 6 are barred by Rule 5A:18. As the majority states, Harris made known to the court that he objected to the introduction of the Texas notes. The Commonwealth's attorney asked Garris if, based on the Texas notes, he would "describe for the Court how the defendant is alleged to have violated Condition 6." Immediately after, before Garris had a chance to answer the Commonwealth's question, Harris stated: "I have an objection. It will be a continuing objection." He went on to explain that Harris has "the ability to confront and cross-examine witnesses" and that admitting the testimony "is a violation of his due process rights for that probation officer not to be here and testifying [because] . . . Garris has no personal knowledge." Harris specifically mentioned the *Cox* case as authority. The trial court stated that it didn't "know what [wa]s going to be said" and instructed Garris to testify, stating that "maybe [the testimony] c[ould] solve . . . some of the objections." During concluding arguments, Harris stated that he was "assuming the Court overruled [his] objection when the officer was testifying to Condition[] 6." The trial court responded: "The Court will do this: I'm going to find the defendant guilty of Conditions 1, 6, and 8." It further stated: "Clearly, [Harris is guilty of Condition] 6[;] the Court finds him guilty because of some 13 times failing to report." This statement was a ruling on Harris's objection to

- 20 -

within the document prepared by another Virginia probation officer. There is no evidence that corroborates the *specifically alleged conduct* violative of Condition 6, as opposed to instances of the same or similar conduct at a different time.

The balancing test is also not met in this case. "The '"balancing test[ ]" requires the court to weigh the interests of the defendant in cross-examining his accusers against the interests of the prosecution in denying confrontation.'" *Johnson*, 296 Va. at 275-76 (quoting *Henderson*, 285 Va. at 327-28). "The two tests are overlapping and are not mutually exclusive. For instance, when applying the balancing test, the reliability of the evidence may, in some circumstances, be so strong as to overwhelm the defendant's interests in confrontation." *Id.* at 276 (quoting *Henderson*, 285 Va. at 328). The Supreme Court has held that the balancing test was satisfied where there was "evidence [that] witness intimidation" caused the unavailability of the declarant of the contested hearsay testimony. *See, e.g.*, *Henderson*, 285 Va. at 331 ("The evidence of witness intimidation was alone sufficient to satisfy the 'balancing test.'").

Here, the Commonwealth argues that the balancing test should weigh in its favor because it would be a hardship for it to bring probation officers from other jurisdictions to testify at probation revocation proceedings in Virginia. This argument lacks merit. Under Virginia caselaw, coordinating the appearance of witnesses is not a "hardship" we consider in applying the balancing test. In every case that applies the good cause analysis, the Commonwealth faces

---

evidence related to Condition 6—the court overruled Harris's objection. In response to Harris's statement asking the court to clarify its ruling on his objection, the trial court stated it was finding Harris guilty of violating Condition 6, based on the objected to evidence about Condition 6.

Even if we take the majority's view that the trial court was non-responsive to Harris's statement about whether the court was overruling his objection, I would still hold that, under these circumstances, Harris's objection is preserved. Harris made his objection known to the court. He effectively asked the court to rule on his objection, a request to which the court did not respond. Harris sought a ruling on his objection. How the court responds to that request is not within Harris's control. Thus, Harris's actions were sufficient to preserve his objection to hearsay evidence about violation of Condition 6.

some hardship in bringing the declarant as a witness, otherwise the Commonwealth would not have the need to rely on hearsay testimony. The Commonwealth also argues that Harris had "little . . . interest" in cross-examining the Texas probation officer who created the Texas notes. It argues that this is so because Harris waived his probable cause hearing on violations of his Texas probation. However, the Commonwealth cites no authority for the proposition that waiving a probable cause hearing in a prior proceeding, in a different jurisdiction, means that a defendant lessens or waives his right of confrontation in the current proceeding, and I would not make such a holding. Because the Commonwealth has not otherwise demonstrated that special circumstances—such as witness intimidation—have heightened the prosecution's interest in denying confrontation and lessened Harris's interest in confrontation, I would hold that the balancing test is not satisfied.

Because the contested evidence here meets neither the reliability test nor balancing test, the trial court's admission of this evidence violated Harris's right to confrontation.

The trial court's admission of Garris's testimony about Harris's positive drug tests and failures to report was not harmless error. Our Supreme Court has held that even where there is another basis for the trial court to have found a probation violation, the error is not harmless if "it appears likely that the evidence erroneously admitted was at least a contributing factor in the court's decision" of what "punishment [to] impose[]." *Turner v. Commonwealth*, 278 Va. 739, 744 (2009)

Although Harris's new convictions established a Condition 1 violation and provided a basis for a probation violation finding, admitting Garris's testimony about Harris was not harmless error because it was a contributing factor in the court's sentencing decision. In pronouncing its sentence, the trial court stated:

> [N]ow, *we've got issues of not just the failure[s] to appear[]* at the office and/or for drug screens. *We have the positive screens*, and

- 22 -

that's a classic example of why the Court puts limitations on its violations that on your first violation or your second unexcused absence or something like that so we don't get into the situation where people have spent 12, 13, 14, 15 like I saw in Norfolk the other 18 positive screens over 2 years before they violated them, and the only reason they violated them was because they got locked up for new Condition 1 felonies.

(Emphases added). Thus, I cannot say that admission of Garris's testimony about Harris's positive drug screens was harmless error.

For the reasons stated, I would reverse the trial court's admission of Garris's testimony about Harris's positive drug screens and remand the matter for a new hearing.